UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ABET JUSTICE LLC, et al.,<br><br>　　　　　　　　　　　Plaintiff(s),<br><br>　　v.<br><br>FIRST AMERICA TRUSTEE SERVICING SOLUTIONS, LLC, et al.,<br><br>　　　　　　　　　　　Defendant(s). | Case No. 2:14-CV-908 JCM (GWF)<br><br>ORDER |

　　　　Presently before the court is counterdefendant Sunridge Heights's (the "HOA") motion for summary judgment. (ECF No. 106). Defendant/counterclaimant Bank of New York Mellon fka Bank of New York as trustee for the certificate-holders of CWMBS, Inc., CHL mortgage pass-through trust 2007-J2 mortgage pass-through certificates, series 2007-J2 ("BNYM") filed a response (ECF No. 125), to which the HOA replied (ECF No. 127).

　　　　Also before the court is a motion for summary judgment filed by defendants/counterclaimants BNYM, First America Trustee Servicing Solutions, LLC's ("FATSS"), and Residential Credit Solutions, Inc. ("RCS" and collectively, with FATSS and BNYM, as "defendants"). (ECF No. 107). The HOA filed a response (ECF No. 124), to which defendants replied (ECF No. 128).

　　　　Also before the court is *pro se* plaintiff/counterdefendant Guetatchew Fikrou's ("Fikrou") motion for summary judgment. (ECF No. 118). BNYM filed a response. (ECF No. 122). Fikrou has yet to reply, and the period to do so has since passed.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

**I.     Facts**

This case involves a dispute over real property located at 2138 Montana Pine Drive, Henderson, Nevada 89052 (the "property").

On March 20, 2007, Shannon Moore obtained a loan from Countrywide Home Loans, Inc. Mortgage in the amount of $556,000.00 to purchase the property, which was secured by a deed of trust recorded on April 26, 2007.

The deed was assigned to BNYM via an assignment of deed of trust recorded on November 9, 2010.[1] An assignment of deed of trust was recorded on March 7, 2014, clarifying the assignment to BNYM.

On September 11, 2013, defendant Nevada Association Services, Inc. ("NAS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $4,062.92. (ECF No. 49 at 51). On October 28, 2013, NAS recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $4,988.64. (ECF No. 49 at 53).

On March 17, 2014, NAS recorded a notice of trustee's sale, stating an amount due of $5,867.36. (ECF No. 49 at 57). BNYM did not bid or pay the noticed amount. On April 11, 2014, Abet Justice, LLC ("Abet") purchased the property at the foreclosure sale for $42,100.00. A trustee's deed upon sale in favor of Abet was recorded on April 14, 2014. (ECF No. 49 at 59). Fikrou asserts that he is the owner of Abet. (ECF No. 1).

On June 11, 2014, Fikrou and Abet filed the underlying complaint against defendants, alleging two causes of action: (1) quiet title; and (2) declaratory relief. (ECF No. 1). Abet's claims were dismissed with prejudice on September 26, 2016. (ECF No. 132).

On February 9, 2015, defendants filed an answer. (ECF No. 33). On April 29, 2015, defendants filed an amended answer and counterclaim, alleging six causes of action: (1) quiet title/declaratory judgment; (2) preliminary and permanent injunction against Fikrou; (3) wrongful foreclosure against NAS and the HOA; (4) negligence against the HOA and NAS; (5) negligence *per se* against the HOA and NAS; and (6) breach of the covenant of good faith and fair dealing

---

[1] (ECF No. 49 at 46–47).

James C. Mahan
U.S. District Judge

- 2 -

against the HOA. (ECF No. 49). On March 23, 2016, the court dismissed BNYM's counterclaims (2) through (6). (ECF No. 104).

In the instant motions, the HOA, defendants, and Fikrou have all filed motions for summary judgment. The court will address each as it sees fit.

## II.  Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not

**James C. Mahan**
**U.S. District Judge**

- 3 -

consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   Discussion**

As an initial matter, the court acknowledges that Fikrou's pleadings were filed *pro se* and are therefore held to less stringent standards. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citation omitted). However, "*pro se* litigants in an ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

**A.  The HOA's Motion for Summary Judgment** (ECF No. 106)

In its motion, the HOA moves for summary judgment of the quiet title claim in favor of Fikrou. (ECF No. 106). The HOA asserts that Abet and Fikrou purchased the property at the foreclosure sale and took title free and clear pursuant to Nevada law. (ECF No. 106).

The HOA, however, fails to sufficiently show that Fikrou is entitled to summary judgment on his quiet title claim. On April 11, 2014, Abet, not Fikrou, purchased the property at the foreclosure sale for $42,100.00, and the trustee's deed upon sale in favor of Abet, not Fikrou, was recorded on April 14, 2014. (ECF No. 49 at 59). Thus, the HOA has not shown Fikrou is entitled to summary judgment on his quiet tile claim.

Accordingly, the HOA's motion for summary judgment will be denied.

**B.  Defendants' Motion for Summary Judgment** (ECF No. 107)

Defendants' argue that summary judgment in their favor is proper because the foreclosure could not have extinguished the deed of trust. (ECF No. 107). In particular, defendants argue, *inter alia*, that the foreclosure sale violated the bankruptcy discharge, did not comply with NRS Chapter 116, was commercially unreasonable, and violated due process. (ECF No. 107).

### *1.  Bankruptcy Discharge*

Defendants contend that the foreclosure sale violated the bankruptcy discharge of Moore. (ECF No. 107 at 3). In particular, defendants assert that Moore filed for Chapter 7 bankruptcy on

**James C. Mahan**
**U.S. District Judge**

- 5 -

1  May 17, 2010, and received a discharge on June 13, 2012. (ECF No. 107 at 3–4). The court
2  disagrees with defendants' characterization of the bankruptcy discharge.

3  Assuming defendants even have standing to assert such argument on behalf of Moore, their
4  argument fails. A Chapter 7 discharge "extinguishes *only* 'the personal liability of the debtor.'"
5  *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (quoting 11 U.S.C. § 524(a)(1)). "Codifying
6  the rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), the Code provides
7  that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *Id.*
8  (citations omitted).

9  Accordingly, the court will deny defendants' motion for summary judgment as it relates to
10  this issue.

### *2. Deed Recitals*

12  Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its
13  homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives
14  priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as
15  "[a] first security interest on the unit recorded before the date on which the assessment sought to
16  be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

17  The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first
18  security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the
19  Nevada Supreme Court provided the following explanation:

20  As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces,
21  a superpriority piece and a subpriority piece. The superpriority piece, consisting of
   the last nine months of unpaid HOA dues and maintenance and nuisance-abatement
   charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all
22  other HOA fees or assessments, is subordinate to a first deed of trust.

23  334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

24  Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority
25  lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true
26  superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see*
27  *also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale"
28  upon compliance with the statutory notice and timing rules).

James C. Mahan
U.S. District Judge

- 6 -

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

>(a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
>(b) The elapsing of the 90 days; and
>(c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2]  "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc., Inc. v. N.Y. Cmty. Bancorp, Inc.*, 366 P.3d 1105, 1110 (Nev. 2016) ("*Shadow Wood*").  Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals.  *See id.* at 1112.

Here, the parties have provided the recorded trustee's deed upon sale, the recorded notice of delinquent assessment, the recorded notice of default and election to sell, and the recorded notice of trustee's sale.  Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure.  *See id*. at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure.").  Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.  Thus, defendants' motion for summary judgment will be denied as it relates to this issue.

---

[2] The statute further provides as follows:

>2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
>3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

**James C. Mahan**
**U.S. District Judge**

- 7 -

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle defendants or Fikrou to success on their quiet title claim. *See id.* (rejecting contention that NRS 116.31166 defeats, as a matter of law, action to quiet title). "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

### *3.   Commercial Reasonability*

Defendants contend that *Shadow Wood* held that a court can invalidate a foreclosure sale based on grossly inadequate price alone. (ECF No. 107 at 15). In support, defendants argue that the purchase price was less than 8.6% of the appraised value of the property at the time of the foreclosure sale. (ECF No. 107 at 16).

The court disagrees. NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58

---

[3] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

**James C. Mahan**
**U.S. District Judge**

(D. Nev. 2016).  In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression."  *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite defendants' assertion to the contrary, the *Shadow Wood* court did not adopt the restatement.  In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement.  *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A).

Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls.  *See* 639 P.2d at 530.  Thus, grossly inadequate sale price is insufficient to justify setting aside a foreclosure sale absent a showing fraud, oppression, or unfairness.

Next, defendants argue that the defects in the foreclosure sale coupled with the purchase price establish commercial unreasonableness.  (ECF No. 107 at 17–18).  However, defendants have not established any defects in the foreclosure sale.  Accordingly, defendants' motion for summary judgment will be denied as to this issue.

James C. Mahan
U.S. District Judge

### 4. Bona Fide Purchaser Status

The parties dispute Abet's status as a bona fide purchaser. The issue of bona fide purchaser ("BFP") status is distinct from that of the conclusiveness of deed recitals. Specifically, the issue of BFP status concerns a buyer's knowledge of competing interests, whereas the other concerns a statutory presumption that can be equitably overcome under *Shadow Wood*. *See, e.g.*, *Nationstar Mortg., LLC*, 184 F. Supp. 3d at 859–60.

A BFP is a person who purchases real property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947) (emphasis omitted); *see also Moore v. De Bernardi*, 220 P. 544, 547 (Nev. 1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive."). Under Nevada law, "bona fide purchaser" means as follows:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1). In other words, a later-obtained interest can prevail over an earlier-obtained interest where the later purchaser has no knowledge of the previous interest and records his/her interest first. *See Nationstar Mortg., LLC*, 184 F. Supp. 3d at 860.

The court finds that genuine issues of fact exist regarding Abet's status as a bona fide purchaser so as to preclude summary judgment. A reasonable jury could conclude that Abet was not a bona fide purchaser because a reasonable purchaser would have perceived some risk that the foreclosure would not extinguish the first deed of trust as the law was not clear at the time of the sale that the foreclosure would extinguish the deed of trust. *See id*.

### 5. No Tender

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior

James C. Mahan
U.S. District Judge

- 10 -

lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

Here, defendants do not dispute that no attempt to pay the deficiency amount was made. Pursuant to the notice of trustee's sale, $5,867.36 was due. (ECF No. 49 at 57). Had BNYM paid the noticed amount, the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Rather than paying the noticed amount and preserving their interest, defendants now seek to profit from their own failure to follow the rules set forth in the statutes. *Cf.* Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

### *6. Constitutional Arguments*

The court must address the aforementioned issues before considering any constitutional claims. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ("[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision."); *United States v. Index Newspapers LLC*, 766 F.3d 1072, (9th Cir. 2014) ("[F]ederal courts generally do not reach constitutional questions if cases can be resolved on other grounds.").

Because genuine issues exist precluding summary judgment, the court declines to reach the constitutional questions at this time.

**C. Fikrou's Motion for Summary Judgment** (ECF No. 118)

In his motion, Fikrou seeks quiet title in his favor. (ECF No. 118). However, Fikrou has failed to present any evidence that he has any interest in the property. While Fikrou asserts that

he is the owner of Abet, Fikrou has failed to set forth any evidence in support of his assertion. Accordingly, Fikrou's motion for summary judgment will be denied.

Further, Fikrou filed a second untimely motion for summary judgment (ECF No. 129) without leave. In that motion, Fikrou moves to represent Abet and attempts to quitclaim the property to himself. (ECF No. 129 at 2). The court has previously denied Fikrou's request to represent Abet *pro se* and set forth the reasons why. (ECF Nos. 121, 132). Further, Fikrou cannot transfer Abet's interest in the property through a motion for summary judgment.

Accordingly, the court will strike Fikrou's second motion for summary judgment. *See, e.g.*, *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (holding that district courts have inherent power to control their own dockets); *see also* LR IC 7-1 ("The court may strike documents that do not comply with these rules.").

## IV.  Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the HOA's motion for summary judgment (ECF No. 106) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the motion for summary judgment (ECF No. 107) filed by BNYM and FATSS be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Fikrou's motion to extend time (third request) (ECF No. 116) be, and the same is, GRANTED *nunc pro tunc*.

IT IS FURTHER ORDERED that Fikrou's motion for summary judgment (ECF No. 118) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Fikrou's motion for summary judgment (ECF No. 129) be, and the same hereby is, STRICKEN.

IT IS FURTHER ORDERED that Fikrou's motion for judgment (ECF No. 135) be, and the same hereby is, DENIED as moot.

. . .

. . .

. . .

James C. Mahan
U.S. District Judge

1      IT IS FURTHER ORDERED that Fikrou's motion to extend time (ECF No. 138) be, and
2  the same hereby is, DENIED as moot.
3      DATED February 22, 2017.

_____
UNITED STATES DISTRICT JUDGE